[Civ. No. 3224. Second Appellate District, Division Two.—December 24, 1920.]

## BUELL V. STEVENS, Appellant, v. SOUTHERN PACIFIC LAND COMPANY (a Corporation), Respondent.

[1] PUBLIC LANDS—PATENT TO—ACTION TO ENFORCE TRUST IN—DEFECTS IN DEFENDANT'S TITLE—RIGHT OF PLAINTIFF TO SUCCEED.— In an action to have it decreed that certain lands which had been patented to the defendant by the United States were held in trust for plaintiff, by reason of irregularities in the actions of government officials through which the patents were issued, the plaintiff must succeed by the strength of his own title; and unless he can show title in himself he cannot avail himself of any defect in the defendant's title to the property.

[2] ID.—HOMESTEAD ENTRY—CHARACTER OF LAND.—Before any rights can vest through a homestead entry, the land sought to be thus acquired must be subject to disposition under the laws applicable to such proceedings.

[3] ID. — APPROVAL OF REPORT OF SMILEY COMMISSION — RESTORATION
OF LANDS TO PUBLIC DOMAIN—EFFECT OF PRESIDENTIAL ORDER.—
The order of the President of the United States, made December
29, 1891, approving the report of the Smiley commission, which
was appointed pursuant to the act of Congress approved January
12, 1891 (26 Stat. 712), and which recommended that certain
lands be restored to the public domain, did not have the effect of
restoring such lands to the public domain, such presidential order
having expressly provided that "all of the lands mentioned in said
report are hereby withdrawn from settlement and entry."

APPEAL from a judgment of the Superior Court of
Riverside County. Hugh H. Craig, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. C. Needham and L. L. Dennett for Appellant.

Frank Thunen for Respondent.

WELLER, J.—Plaintiff instituted suit in the superior
court of Riverside County seeking to have it decreed that
certain lands in that county which had been patented to
the defendant by the United States were held in trust for
plaintiff, by reason of irregularities in the actions of gov-
ernment officials through which the patents were issued.

Chronologically, the events which enter into the history of
the land in controversy transpired in the following order:

On May 15, 1876, by executive order, certain lands (in-
cluding the lands in controversy) were set apart for the use
and benefit of the Mission Indians. An act of Congress,
approved January 12, 1891 (26 Stat. 712), provided for the
appointment of a commission of three persons to select a
reservation for each band or village of the Mission Indians
residing in the state of California, the selection to include,
as far as practicable, the lands and villages which had been
actually occupied by the Indians. The commission submitted
its report to the Secretary of the Interior on December 5,
1891, and, among other things, recommended that the land
here in controversy should be restored to the public domain.
On December 28, 1891, the report of the Smiley commission
was approved by an order reading as follows: "Executive
Mansion, December 29th, 1891. The report of the Mission

Indian commission, appointed under the act of January 12, 1891 (26 Stat. 712), is hereby approved, except so much thereof as relates to the purchase of lands from and exchange of lands with private individuals, which is also approved subject to the condition that Congress shall authorize the same. All of the lands mentioned in said report are hereby withdrawn from settlement and entry until patents shall have been issued for said selected reservations, and until the recommendations of said commission shall be fully executed, and, by the proclamation of the president of the United States, the lands or any part thereof shall be restored to the public domain. Benj. Harrison, Department of the Interior, Washington, D. C., December 29th, 1891. Under the act of Congress as provided, approved John W. Noble, secretary.'' No proclamation has ever been made restoring any of the lands to public entry.

In a letter of date February 17, 1911, addressed to the commissioner of the general land office, the commissioner of Indian affairs expressed the opinion that the lands described in the complaint had been restored to the public domain, and, on April 1, 1911, the register and receiver of the United States land office at Los Angeles, California, were directed to note upon their records that the land was subject to disposition in accordance with the provisions of the law relating to public lands.

On April 24, 1911, the plaintiff, being in all respects qualified to acquire public land, made a homestead application to the register and receiver of the United States land office at Los Angeles for the N. W. ¼ of section 24, T. 5 S., R. 7 E., S. B. M., being a part of the land described in the recommendation of the Smiley commission for restoration to the public domain. After complying with all the prerequisite details, plaintiff entered into the possession of the land, and proceeded to cultivate and improve it as required by law.

April 26, 1911, the Secretary of the Interior ordered the land withdrawn from entry, and, on May 2, 1911, the commissioner of the general land office notified the register and receiver at Los Angeles by telegram that the land was reserved from public entry. By order dated June 15, 1911, the Department of the Interior suspended the entry of plaintiff, pending a determination as to whether the land

was subject to homestead entry by plaintiff, which was followed by an order from the commissioner of the general land office, on July 6, 1911, canceling plaintiff's entry. Plaintiff appealed from the action of the general land office, and, after a hearing, the Secretary of the Interior affirmed the decision.

On December 11, 1914, a patent was issued by the United States conveying to the defendant the land claimed by plaintiff. This conveyance was made in exchange for certain odd-numbered sections which had theretofore been patented to the Southern Pacific Railway Company as part of the general grant to that company by the act of March 3, 1871. The complaint alleges that the sections surrendered had been occupied by the Mission Indians from time immemorial as a home, and that, therefore, the railroad company obtained by the patent the bare legal title, to be held in trust for the Indians, and the consideration given by the company for the land involved in this litigation was valueless.

Defendant demurred to the complaint on the general grounds, and at the same time gave notice of motion for judgment on the pleadings. When the demurrer and motion were argued, copies of all the proceedings affecting the title to the land in question were presented and considered by the court. In due time the demurrer, was sustained and ten days' time given plaintiff to amend, in default of which the motion for judgment was granted and the judgment entered from which this appeal is taken.

[1] It is conceded that appellant must succeed by the strength of his own title; and unless he can show title in himself he cannot avail himself of any defect in defendant's title to the property.

[2] Before any rights can vest through a homestead entry, the land sought to be thus acquired must be subject to disposition under the laws applicable to such proceedings.

[3] Plaintiff recognizes this principle, and seeks to show that the land entered by him was restored to public purchase by the approval of the report of the Smiley commission. Such, in fact, is the sole basis of his contention; for if the land was not restored to the public domain by the order of December 29, 1891, it was still in reserve under the executive order of May 15, 1876. The controversy,

therefore, must be resolved by a construction of the order approving the Smiley commission report.

Reverting to this order, it will be noted that it provides that "all of the lands mentioned in said report are hereby withdrawn from settlement and entry." The land claimed by the plaintiff was mentioned in the report, and consequently is included in the expression "all the lands." The order certainly could not have been intended to mean that only lands to be set apart for the Indians were withdrawn, because it was the purpose of the commission to provide a permanent reservation for their use; and it was not contemplated that their lands should ever be thrown open to settlement or entry. The withdrawal covered lands which had been selected pursuant to the provisions of section 3 of the act creating the Smiley commission, and was to remain effective until patents had been issued in conformity with the commission's recommendations. The paragraph of the executive order above quoted indicates the intention to hold in reserve all of the lands described in the report of the commission until such time as adequate provision had been made for the accommodation of the Indians and the President satisfied that any part of the land was no longer necessary for that purpose. Subsequent proceedings demonstrate the wisdom of this action; for some of the lands allotted to the Indians were within the limits of the railroad grant, and, in accordance with section 3 of the act, the railroad company selected the lands recommended for restoration by the Smiley commission in lieu of the portion of its grant set apart by the commission for the Indian reservation. The commissioner of Indian affairs erred in the conclusion expressed in his letter of February 17, 1911, to the commissioner of the general land office, that the approval of the report of the Smiley commission carried with it the recommendations of the commission regarding restoration. This erroneous opinion was adopted by the general land office, and the officers at Los Angeles notified to note the land as available for public entry. On further consideration, however, the commissioner of the general land office decided that the conclusion was unauthorized, and ordered plaintiff's entry canceled. On appeal to the Secretary of the Interior this action was upheld. We entertain no doubt

that the later decision was correct, and that the cancellation of plaintiff's entry was justified.

Plaintiff attacks the proceedings by which defendant acquired title to the premises; but, as we have seen, he shows no title in himself, and hence is in no position to defeat defendant's claim to the property.

Judgment affirmed.

Finlayson, P. J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1921.

All the Justices concurred.